## Edward Reiter, Appellee, v. The Standard Scale & Supply Company, Appellant.

### Gen. No. 14,008.

1. EMPLOYER AND EMPLOYE—*what not equivalent to a discharge.* A request by the employer for the resignation of his employe is not equivalent to a discharge when not so treated by the parties.

2. EMPLOYER AND EMPLOYE—*what sickness of latter does not justify withholding of salary.* Temporary sickness of an employe does not justify the withholding of his compensation where the contract of service provides that such employe shall "give his best services for the promotion and welfare of the business" of such employer.

3. EMPLOYER AND EMPLOYE—*when employe entitled to salary.* An employe is entitled to his compensation during a period in which he does not report for duty where he has been told not to so report until notified—no notification to report having been given and his discharge not made.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed June 2, 1908.

WINKLER, BAKER & HOLDER, for appellant.

ASHCRAFT & ASHCRAFT, for appellee; CHARLES F. RATHBUN and E. M. ASHCRAFT, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

In an action of *assumpsit* begun November 6, 1906, to recover the installments of salary of plaintiff for the months of May, June, July, August, September and October 1906, at $300 per month, plaintiff had judgment for $1,700, and the defendant appealed.

The contract of employment was originally made between plaintiff and the Standard Scale and Supply Co., Limited, but the defendant company purchased and took over the business of the other scale company,

assumed said contract, and the contract is treated by both parties as if originally made between plaintiff and defendant. The contract of employment was in writing, and provided for the employment of plaintiff by said Scale Company as manager of its branch house in Chicago, for the term beginning March 1, 1904, and ending December 31, 1911, his compensation to be $3,600 per year, payable in monthly installments of $300, and certain share in the profits of the business of said branch house; the plaintiff "to give his best services for the promotion and welfare of the business."

Appellant contends that plaintiff was discharged by defendant July 31, 1906; that he was ill much of the time during May, June and July, and therefore cannot recover his salary for those months on the contract, because it was not performed on his part, but can only recover on a *quantum meruit* or *quantum valebant* whatever compensation he may reasonably deserve to have for such services as he did render during those months; that because of his discharge he cannot recover the monthly installments of salary specified in the contract for August, September and October, but his remedy, if any he has, is for breach of the contract.

As early as October, 1905, defendant asked for plaintiff's resignation. This was not *per se* a discharge of plaintiff by defendant, and was not so treated by the parties. Plaintiff refused to resign, retained his position, discharged his duties, and was paid his salary up to and including April, 1906. Plaintiff was ill during the greater part of May and June, 1906, and July 3 defendant wrote him that it was an opportune time for him to offer his resignation. To this letter plaintiff replied July 17. Defendant then wrote plaintiff as follows:

"Your letter of the 17th inst. replying to ours of the 3rd inst. has been received. We regret that your management has been so unprofitable as to make it necessary for us to have your resignation. We are not liable for unearned salary during your absence.

We desire to close the matter speedily and amicably, if possible, and will be glad to have a proposition from you so as to wind up the affair at once, and only a reasonable proposition can be considered.

Awaiting your prompt reply, we are, etc.''

During plaintiff's illness Mindrum, a salesman, was in charge of the office of defendant in Chicago. July 31, 1906, plaintiff went to the office to take charge of the business and was shown by Mindrum the following telegram:

''Assume charge Chicago House. Refuse to recognize Mr. Reiter as manager.''

Plaintiff then collected his personal effects and left the office. The next day he received a letter from defendant, dated July 30, stating: ''We repeat that it is our wish to close the matter at once and that this is the opportune time for you to offer your resignation.''

August 5, Gill, the president of the defendant company, came to Chicago and met plaintiff. Plaintiff told Gill that he was ready to go back to work, and Gill asked him to resign, and plaintiff refused to resign. He asked Gill if he should go back to the office next morning and take the management and Gill replied, ''No, we want you to resign.'' Two or three days later the conversation was in substance repeated. August 11, plaintiff asked Gill if he was ready to have plaintiff go to work and Gill replied, ''No, we want you to resign.'' Plaintiff said, ''I won't resign.'' He asked Gill, ''Am I to understand that I have been discharged?'' and Gill said again, ''We want you to resign.'' Plaintiff said, ''I won't resign. If I don't resign, I suppose you have got to discharge me or else I will go back to work,'' and Gill said, ''I think you would rather resign.'' Gill asked plaintiff to make a proposition, and plaintiff offered to resign and cancel the contract on payment of $5,000. Gill refused to accept the proposition and made a counter proposition which plaintiff declined to accept. This conversation occurred Saturday. At its close, plaintiff said that he would go to the

office Monday and take charge to carry out his contract, and Gill said, ''No, don't come to the office until I notify you.'' It was admitted that Gill, if present, would testify that he told plaintiff August 11: ''that his place as manager had been filled, and that the defendant company had no further use for his services.'' Plaintiff in rebuttal testified that Gill did not say that defendant had no further use for his services, but did say that he would let plaintiff know, through Mindrum, if he wanted plaintiff to go back to work Monday. Some weeks later, plaintiff reported at the office to take charge, but was not permitted to do so.

If the transaction of July 31 and the letter of July 30, stood alone, they might well be held to amount to a discharge, but those acts must be considered in connection with all the other evidence in the case. The defendant in October, 1905, asked for plaintiff's resignation, but did not treat such request as a discharge, but paid plaintiff his salary up to the end of April, 1906. It again asked for plaintiff's resignation July 3, 1906, but did not treat the request as a discharge, for it repeated the request July 19, 1906. It did not treat those requests, or the occurrence of July 31, or the letter of July 30, 1906, as a discharge, for the president of the company came to Chicago early in August and repeatedly requested plaintiff to resign, and in answer to plaintiff's direct question whether he was to understand that he had been discharged, only repeated the request that plaintiff resign, and according to plaintiff's testimony at the close of the last conversation between them, in answer to plaintiff's statement that he would report for work the next week day, told plaintiff not to come to the office until the defendant notified him to come. By each request to plaintiff to resign, defendant recognized the contract of employment as existing and in force, and the plaintiff as still in its service under said contract.

We cannot, on all the evidence in the record, say that the finding of the jury, implied by the verdict, that

the plaintiff was not discharged by the defendant before the beginning of the suit, is so far against the weight of the evidence as to require a reversal of the judgment on that ground.

By the contract the plaintiff was employed for a term of nearly eight years, as the manager of defendant's branch house in Chicago. He was ill most of the time from May 4 to July 31, 1906, and was at the office only three or four days during that time. But his illness was not of such a nature as to prevent him from transacting business at his house, and he had his mail sent there and communicated with the office by telephone. His contract required him, "to give his best services for the promotion and welfare of the business," and there is no evidence tending to show that he did not do so. We do not think that under the evidence the defendant was entitled to any reduction from the stipulated salary of the plaintiff because of his temporary illness. Erickson v. Stone, 102 E. C. L. 248; Ellis v. Ellis, Q. B. 248.

The question of the right of an employe to recover for constructive services after his discharge is not presented on this record. The suit is for installments of salary. The declaration does not aver that plaintiff was discharged by defendant, but on the contrary, avers that he is still in the service of the defendant. If he was not discharged, but reported for duty so soon as he was able to do so and held himself in readiness to perform the duties he was employed to perform, the law will not require him to forfeit his right to the compensation agreed upon because the defendant saw fit to direct him not to enter upon the performance of those duties without notice from the defendant, and then failed to give him such notice. Berg v. Carroll, 16 Daly, 73.

No demand for salary was necessary, but it was proper for plaintiff to show that he notified defendant of his readiness to perform the contract, and we think it was not reversible error to admit plaintiff's letters

of August 20 and October 1, 1906, limited in their effect, as they were by the last instruction given for the plaintiff.

We find no reversible error in the instruction given for the plaintiff, nor in the refusal or modifications of the instructions asked by the defendant, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*